## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PIERRE MONDESIR, VINCENT GUNTER, RICHARD MONDESIR, individually and trading as Mondesir Entertainment Investment Group, LLC,** | : : : : : : | **No. 3:22cv1175** **(Judge Munley)** |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| **KINGSTON BOROUGH, CHIEF RICHARD J. KOTCHIK, OFFICER JOHN BELVILAGUA, OFFICER "DOE" 1-10,** | : : : : : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

This case involves allegations that the defendants used their official authority to harass plaintiffs' lawfully operating business in violation of the plaintiffs' civil rights.  Before the court for disposition is the motion to dismiss plaintiffs' complaint filed by Defendants Kingston Borough, Police Chief Richard J. Kotchik, and Police Officer John Belvilaqua.  The matter has been fully briefed and is ripe for decision.

**Background**[1]

Plaintiffs, Pierre Mondesir, Vincent Gunter, and Richard Mondesir,

individually and trading as Mondesir Entertainment Investment Group, LLC,

opened a business at 385 Main Steet in the Borough of Kingston, Pennsylvania.

(Doc. 1, Compl. ¶ 8).  The business, known as "Leonardo's", consists of a bar,

liquor store, and small nightclub. (Id.)  Leonardo's is located near the boundary

between Kingston Borough and Edwardsville Borough.  (Id. ¶ 17b). [2]  Very close

to plaintiff's business, is a competing establishment named Swizzle Stick Bar,

located at 434 Main Street in Edwardsville.  (Id. ¶ 18b).

Plaintiffs purchased the property where the business is located on April 30,

2021.  (Id. ¶ 20).  They spent nearly $100,000 in preparing to open the business,

which included soundproofing and other renovations. (Id. ¶¶ 26, 41).  They

applied for a municipal occupancy permit, which Defendant Kingston Borough

approved following an inspection.  (Id. ¶ 26).  In June of 2021, plaintiffs secured a

liquor license through Pennsylvania Liquor Control Board.  (Id. ¶ 23).  Plaintiffs

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of
the proceedings, the court must accept all factual allegations in the complaint as true. Phillips
v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination,
however, as to the ultimate veracity of these assertions.

[2] The complaint contains two sets of paragraphs numbered 16 through 18.  For clarity the court
will refer to the first set as 16(a) through 18(a) and the second set as 16(b) through 18(b).

also received the necessary licenses to operate as a restaurant/bar with music from a jukebox and dancing.  (Id. ¶ 29).

In September 2021, Leonardo's opened for business as a restaurant and bar with a jukebox and expected normal hours of operation.  (Id. ¶ 42).  Plaintiffs' establishment plays R&B, hip hop, and reggae music.  (Id. ¶ 43).  The targeted demographic for clientele of the business is "upscale urban."  (Id.) The business's patrons are predominately African American.  (Id. ¶ 44).  Plaintiff Vincent Gunter is a United States citizen of Asian descent.  (Id. ¶ 10).  Plaintiff Richard Mondesir is a United States citizen of Haitian descent.  (Id. ¶ 11).

Plaintiff Pierre Mondesir applied to the Kingston Borough Zoning Officer on October 18, 2021 to provide live entertainment, including live musical bands, disc jockey competitions, and disc jockeys at Leonardo's.  (Id. ¶ 33).  Evidently, the zoning officials denied the request.   Pierre Mondesir was not allowed to testify or present witnesses at the hearing regarding the request, although the owner of Swizzle Stick Bar was allowed to testify.  (Id. ¶¶ 37-38).  The written decision of the Zoning Hearing Board was hand-delivered to Pierre Mondesir by the Kingston Borough Police Department instead of being mailed.  (Id. ¶ 36).

At all times, plaintiffs operated Leonardo's in a legal manner.  (Id. ¶ 47).  Members of the Kingston Police Department, however, have made efforts to inhibit plaintiffs' business operations.  (Id. ¶ 48).  Plaintiffs allege that defendants

3

engaged in a purposeful campaign of opposition toward the business with a

specific goal of preventing its operation pursuant to plaintiffs' planned objectives.

(Id. ¶ 46).

The Kingston Borough Police Department and other neighboring municipal

police departments undertook the following actions in an effort to prevent

plaintiffs from operating their business and to effectively shut down Leonardo's:

     a.   Photographing the patrons of plaintiffs and their activities.

     b.  Directing negative comments to plaintiffs' patrons and staff during
         events[.]

     c.   Visiting the Plaintiffs with the PA State Police and other neighboring
         police agencies on July 1, 2022 under the guise of a tip that the
         plaintiffs were serving minors in their establishment.  This was
         incorrect and false, as the only patrons in plaintiffs[']
         establishment were over the age of 40.

     d.   Repeatedly positioning Kingston Police vehicles in close
         proximity to the plaintiffs' business with the sole intent of
         discouraging patrons from patronizing the Plaintiff[s']
         business.

               . . .

     f.   Police visits to the property, including the Pennsylvania Liquor
         Control Board and [d]iscriminatory requests for restaurant
         inspections.

(Id. ¶ 50).

The Kingston Borough Police Department continually targeted plaintiffs'

establishment despite the absence of any nuisance violations or criminal

infractions.  (Id. ¶ 52).  Due to defendants' actions, plaintiffs have struggled to

stay open for business.   (Id. ¶ 55).  The constant police presence and harassment prevented plaintiffs from having a continuous flow of patrons.  (Id. ¶ 54).  Plaintiffs have sustained a substantial loss of business and have placed Leonardo's up for sale.  (Id. ¶¶ 56, 58).

Based upon these facts, the plaintiffs filed the instant civil rights complaint against Kingston Borough, its Police Chief Richard J. Kotchik, Police Officer John Belvilaqua and ten (10) John Doe officers.  (See generally Doc. 1, Compl.)  The complaint sets forth the following eight (8) claims for relief:

Count I – Deprivation of property interest (liquor license and occupancy permit) without due process of law, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

Count II – Violation of the Equal Protection Clause of the United States Constitution based on selective enforcement pursuant to 42 U.S.C. § 1983.

Count III – Municipal liability claim for Kingston Borough's failure to adequately train  its officers under Monell v. Dep't of Soc. Svcs. of City of New York, 436 U.S. 658 (1978).

Count IV – State common law claim for tortious interference with business.

Count V – Substantive Due Process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Count VI – State law negligent infliction of emotional distress.

5

Count VII – State law intentional infliction of emotional distress.

Count VIII – Civil conspiracy under 42 U.S.C. § 1983.

Plaintiffs seek in excess of $150,000 in damages. (Doc. 1, foll. ¶ 104).

Plaintiffs filed their complaint on July 28, 2022. In response, on September 27, 2022, defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12). The motion to dismiss has been fully briefed, bringing the case to its present posture.[3]

**Jurisdiction**

As plaintiff brings several claims pursuant to 42 U.S.C. § 1983, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most

---

[3] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a

showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

8

## Discussion

Defendants' motion raises nine grounds for dismissal.  The court will address each in turn.

### 1. <u>Monell</u> Claims

Defendant Kingston Borough is a Pennsylvania municipality.  A municipality may not be sued under 42 U.S.C. § 1983 ("section 1983") for the constitutional violations of its employees or agents.  <u>Monell</u>, 436 U.S. at 691. Only when the constitutional violation is caused by the execution of the municipality's policy or custom may the municipality be held liable.  <u>Id.</u> at 694.  Liability exists when " 'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.' " <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 214 (3d Cir. 2001)(quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)).

The law provides that:

> A government policy or custom can be established in two ways.  Policy is made when a 'decision maker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation policy, or edict.  A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

<u>McTernan v. City of York, PA</u>, 564 F.3d 636, 658 (3d Cir. 2009)  (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).

Defendants argue that the complaint, specifically Counts I and III-VIII lack any factual allegations that could establish a municipal custom or policy to

support <u>Monell</u> liability.  Thus, they argue that all claims against Kingston

Borough should be dismissed.    Plaintiffs on the other hand argue that the

complaint does allege facts to support their theory that Kingston Borough has

permitted a custom of using police business, improper zoning administration, and

enforcement intimidation in the absence of reasonable suspicion and probable

cause for their actions.  After a careful review, the court agrees with the plaintiffs.

Plaintiffs allege that "[o]n information and belief, the Kingston Borough

Zoning officers and Police  Department were instructed to take action that was

designed to prevent plaintiffs from operating their business and to effectively shut

Plaintiffs down." (Doc. 1, ¶ 49).  The complaint details many actions taken by the

defendants which may have been part of a policy, custom or practice, including:

photographing plaintiffs' patrons; directing negative comments at plaintiffs'

patrons and staff; visiting plaintiffs' establishment with the Pennsylvania State

Police and other neighboring police agencies to investigate whether Leonardo's

was serving minors; positioning Kingston Police vehicles in close proximity to

plaintiffs' business to discourage patrons from patronizing it; additional police

visits to the property including with the Pennsylvania Liquor Control Board; and

discriminatory requests for restaurant inspections.  (Doc. 1, ¶ 50).  Further,

plaintiffs claim that despite the absence of any nuisance violations or criminal

infractions, Leonardo's was continually targeted by the Kingston Borough Police

Department.  (Id., ¶ 52).  All this police presence and harassment interrupted the flow of patrons to the business.  (Id. ¶ 54).

Similarly, the complaint alleges that Defendant Kingston and its Police Department do not adequately train its officers "in the proper manner and method to determine the existence of valid outstanding warrants."   (Id. ¶ 84). Additionally, the complaint alleges that "Defendant Borough of Kingston does not train its police officers at all and instead simply utilizes the Chief of Police of the Police Department without assuring that the Department uses its police powers appropriately and constitutionally and provide[s] adequate training and oversight to its police officers."  (Id. ¶ 85).

Thus, plaintiff's complaint makes many factual allegations regarding the actions of Kingston Borough employees and dismissal of Kingston Borough is not appropriate.  To the extent that no specific policy or custom is alleged in the complaint, the court notes that discovery has yet to be completed in this case and such discovery may be needed by the plaintiffs to identify with specificity the relevant policy or custom that violated their rights.

### 2. Equal Protection/Selective Enforcement claim

Count II of the plaintiffs' complaint asserts a cause of action for Equal Protection under the Fourteenth Amendment based upon Selective Enforcement. Specifically, the complaint alleges that the police, *inter alia*, "stop[ped] at

11

plaintiff's business establishment numerous times per weekend.  Officers would surround the premises with police vehicles, walk through the property and interrogate patrons and staff." (Doc. 1, ¶ 77).  Such acts by the police department were done regularly and selectively without proper justification.  (Id.)

Defendants move to dismiss Count II on the basis that the complaint merely makes conclusory statements and recites the legal elements at issue, without pleading facts that would establish an entitlement to relief on equal protection and selective enforcement.  The court disagrees.

To establish a selective enforcement claim, a plaintiff must demonstrate "(1) that it was treated differently from another similarly situated facility, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, or to prevent the exercise of a fundamental right." Jewish Home of Eastern PA v. Centers for Medicare and Medicaid Svcs., 693 F.3d 359, 363 (3d Cir. 2012) (quotation marks and editing marks omitted).

Here, as set forth above, plaintiffs, persons of color, owned a business whose clientele were mainly African American.  The defendants through actions of the Police Department are alleged to have unjustifiably harassed the business. These factual allegations are sufficient to defeat defendants' motion to dismiss. Accordingly, the motion to dismiss Count II will be denied.

### 3. Substantive Due Process claim

Count V of plaintiffs' complaint alleges a substantive due process claim pursuant to 42 U.S.C. § 1983. (Doc. 1, ¶¶ 89-92). This count alleges: "As a direct and proximate result of defendants' actions . . . plaintiffs' substantive due process rights, as protected by the Fourteenth Amendment to the United States Constitution were violated[.]" (Id. ¶ 90). Defendants move to dismiss Count V.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. AMEND. XIV. The concept of due process includes both procedural and substantive aspects. Planned Parenthood of S.E. Pennsylvania v. Casey, 505 U.S. 833, 846-47 (1992) ("it is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure") (quoting Whitney v. California, 274 U.S. 357, 373 (1927)(Brandeis, J., concurring)) (overruled on other grounds by Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022)).

Plaintiffs allege a substantive due process violation. Two aspects of substantive due process exist. One applies to legislative acts and the other protects against non-legislative state action. Nicholas v. Pennsylvania Sate Univ., 227 F.3d 133, 139 (3d Cir. 2000). Here, the complaint alleges non-legislative state action. In such cases, a property interest that falls within the

13

ambit of substantive due process must be alleged in the complaint. The state may not take such an interest away for reasons that are arbitrary, irrational, or tainted by improper motive. Id.

Not all property interests are protected by substantive due process. The threshold for a substantive due process claim, therefore, is for the plaintiff to allege a property interest which is protected by the due process clause of the Fourteenth Amendment. Id. at 139-40. To determine whether a property interest falls under the amendment's protection, the Third Circuit Court of Appeals has "adopted an approach to substantive due process that focuses on the nature of the property interest at stake." Id. at 140. The Third Circuit "has limited non-legislative substantive due process review to cases involving real property ownership." Id.

Neither plaintiffs' complaint nor their brief is specific regarding the property right they seek to assert in the substantive due process count. It appears, however, the plaintiffs complain of the inability to run their business without improper harassment by the police and the denial of a live entertainment license. The defendants' actions resulted in, *inter alia*, wage loss and loss of opportunity. (Doc. 1, ¶ 90). They do not allege that the interest involves real property ownership. Thus, they have not alleged a proper due process property interest in the area of a non-legislative due process claim.

14

Moreover, the Third Circuit has dismissed similar claims of property interests that relate to business or occupational rights.  For example, the court found no substantive due process right in the "ability to earn a living"; being terminated from a public employment; "being actively prevented from winning city contracts in violation of a consent decree with the city"; or "losing contracts because a plaintiff was termed a 'crook' by government employees." Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 155-56 (3d Cir. 2018) (internal citations omitted).  The Third Circuit also has found no property interest in a cab company's right to be the exclusive provider of ride-for-hire services in a city. Id. at 155.  Additionally, a license to operate a business is not a property interest protected by the Constitution. Saucon Valley Manor, Inc. v. Miller, 392 F. Supp. 3d 554, 571 (E.D. Pa. 2019) (collecting cases).

Therefore, plaintiffs' alleged property interest in its inability to properly run its business appears not to be a protected property interest under the Fourteenth Amendment, and the defendants' motion to dismiss Count V, Substantive Due Process will be granted.[4]

---

[4] Plaintiffs have not briefed the issue of whether the property interest at issue is protected by the substantive due process claim.  Rather, their brief focuses on the second portion of the substantive due process analysis, that is, whether the defendants' actions were sufficiently shocking to constitute a constitutional violation. See Kinsella v. United States, 361 U.S. 234, 246 (1960).  As the court has found no protected property interest, the second portion of the due process analysis need not be addressed.

### 4. State Law Claims Immunity Counts IV, VI, and VII

The following counts of plaintiffs' complaint allege state law torts:  Counts IV, tortious interference with business; Count VI, negligent infliction of emotional distress; and Count VII, intentional infliction of emotional distress.   Defendant Kingston Borough argues that it has immunity from liability for these claims based upon the Pennsylvania Political Subdivision Tort Claims Act, ("PSTCA"), 42 PA. CONS. STAT. ANN. § 8541, et seq. Plaintiffs contend that at this stage of the litigation immunity should not be applied to shield the defendants.  After a careful review, the court agrees with Defendant Kingston Borough.

Under the PSTCA, "no local agency shall be liable for any damages on account of injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. ANN. § 8541. Several exceptions to municipal immunity exist.  See 42 PA. CONS. STAT. ANN. 8542(b)(1)-(9).  However, for an exception to immunity to exist, the complained of injury must have been caused by the negligent act of the local agency or an employee thereof.  42 PA. CONS. STAT. ANN. § 8542(a)(2).  The definition of "negligent acts" does "not include acts or conduct which constitutes a crime, actual fraud , actual malice or willful misconduct."   Id. Thus, if willful misconduct is claimed, i.e. an intentional tort, then the exceptions do not apply and immunity shields the local agency from liability.

Tortious interference with business is an intentional tort, therefore, immunity applies to Borough of Kingston on Count IV.  The other two torts alleged in the complaint, intentional infliction of emotional distress and negligent infliction of emotional distress will be dismissed, as discussed more fully below. Therefore, the court need not examine the law to determine if immunity applies to these torts.

Accordingly, Defendant Kingston Borough's motion to dismiss Count IV based upon the PSTCA will be granted and the Borough will be dismissed from that claim.

### 5. Tortious Interference in Count IV

Count IV of plaintiffs' complaint asserts a state law cause of action for tortious interference with business relationships.  (Doc. 1, Compl. ¶¶ 86-88). Defendants argue that Count IV should be dismissed because plaintiffs have not pleaded the necessary facts to support such a claim.  The plaintiffs argue that the motion to dismiss should be denied.

To properly state a cause of action for intentional interference with prospective contractual relations, [5]  the plaintiffs' complaint must allege:  1) a

---

[5] Plaintiffs' complaint labels Count IV as "State Common Law Claim for Tortious Interference with Business".  It is not clear whether a separate cause of action for interference with business exists under Pennsylvania law. The parties have analyzed this count with the law relating to interference with contractual relationships, and the court has also.

prospective contractual relationship between plaintiff and a third party; 2) a purpose or intention to harm plaintiff by preventing that relationship from occurring; 3) the absence of privilege or justification with respect to defendants' conduct; and 4) the occurrence of actual harm or damage to plaintiffs resulting from defendants' conduct. Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014).

Defendants argue that plaintiffs have not pleaded any facts to establish these necessary elements, including the existence of any actual or prospective business relationships for which the defendants have, without justification intentionally interfered. A liberal reading of the complaint, however, indicates that the actual or prospective business relationships that plaintiffs allege is their relationships with customers. Due to the defendants' actions, the plaintiffs have not had a continuous flow of customers and have struggled to stay open for business. (Doc. 1, ¶¶ 54-55). Thus, it appears that plaintiffs have sufficiently pleaded Count IV so as to survive a motion to dismiss. Accordingly, the motion to dismiss Count IV will be denied as to Defendants Kotchick, Belvilaqua and Doe.[6]

---

[6] As stated in the Section 4, however, Defendant Kingston Borough has immunity from liability with regard to Count IV.

### 6. Negligent Infliction of Emotional Distress

Plaintiffs raise a negligent infliction of emotional distress claim in Count VI of their complaint.  Defendants seek dismissal of this count.  The court agrees the negligent infliction of emotional distress claim should be dismissed.

The law provides that: "To state a cause of action for negligent infliction of emotional distress the plaintiff must demonstrate that she is a foreseeable plaintiff and that she suffered a physical injury as a result of defendant's negligence." Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (citing RESTATEMENT (SECOND) OF TORTS §§ 313, 436A). The physical injury alleged by the plaintiff must be more than "[t]emporary fright, nervous shock, nausea, grief, rage, and humiliation if [they are] transitory." Id.  At the same time, "long continued nausea or headaches, repeated hysterical attacks or mental aberration are compensable injuries." Id. Courts have found that "depression, nightmares, nervousness, insomnia and hysteria are physical symptoms warranting recovery." Id.  "Absent some physical injury or impact, Pennsylvania's governing law does not provide recovery for negligent infliction of emotional distress." Redland Soccer Club, Inc. v. Dept. of Army of U.S., 55 F.3d 827, 848 (3d Cir. 1995).

19

Here, plaintiffs' complaint contains no allegations of a physical injury caused by defendants' actions.  Moreover, "[t]he tort of negligent infliction of emotional distress has evolved almost exclusively in the context of those who observe injury to close family members and are as a consequence of the shock emotionally distressed."  Armstrong, 633 A.2d at 609.  This case involving allegations of a municipality and its police force interfering with the operation of a business is not the context in which negligent infliction of emotional distress claims normally arise.   Accordingly, dismissal of Count VI, Negligent Infliction of Emotional Distress is appropriate.[7]

### 7. Intentional Infliction of Emotional Distress

Count VII of plaintiffs' complaint alleges a state law intentional infliction of emotional distress claim.  (Doc. 1, ¶¶ 95-96).  This count will also be dismissed.

To establish an IIED claim, the plaintiff must prove the following:

(1) conduct that is extreme and outrageous;

(2) such conduct must be intentional or reckless;

(3) the conduct must cause emotional distress; and

(4) that distress must be severe.

Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).

---

[7] Plaintiffs' brief provides no meaningful analysis of this claim.  It merely sets forth the standard for negligent infliction of emotional distress and states in a conclusory fashion, "The Defendants['] Motion to Dismiss must be denied."  (Doc. 18 at 25).

Defendants argue that the complaint's allegations do not allege that plaintiffs engaged in extreme and outrageous conduct, and therefore, this count should be dismissed.  The court agrees.

The law provides that recovery for intentional infliction of emotional distress is reserved "for only the most clearly desperate and ultra extreme conduct[.]" Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005) (quoting Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993)). Hoy summarized the case law in this area as follows:

> Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. See e.g., Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46 [of the Restatement (Second) of Torts])); Banyas v. Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236 (1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d. Cir.1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

Id.

21

Plaintiffs' complaint does not sufficiently plead allegations of "extreme and outrageous" actions by the defendants.  Additionally, plaintiffs' brief merely states in a conclusory fashion, after setting forth the standard, "Thus, plaintiffs have sustained their burden of designating specific facts which demonstrate that there is a plausible claim with respect to their claim of intentional infliction of emotional distress." (Doc. 18, Pl. Br. at 24).  Plaintiffs, however, did not designate any facts.  The facts generally pled in the complaint, harassment by the police and failure to be granted a live entertainment license, may justifiably be upsetting if established as true.  These facts do not, however, rise to the level of outrageousness as the examples discussed in Hoy above so as to support plaintiff's cause of action.  Accordingly, Count VII, Intentional Infliction of Emotional Distress will be dismissed.

### 8. Civil Conspiracy

Count VIII of plaintiffs' complaint alleges a civil conspiracy to deprive plaintiffs of their constitutional rights under section 1983.  Defendants move to dismiss Count VIII.  The motion will be denied.

The law provides that:

> To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Such rights include, of course, those protected by the Due Process Clause of the Fourteenth Amendment[.]

22

Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018).  "After

plaintiff establishes that the object of the conspiracy was the deprivation of a

federally protected right, the rule is clear that the plaintiff must provide some

factual basis to support the existence of the elements of a conspiracy:

agreement and concerted action."  Id. at 295 (internal quotation marks and

citation omitted).

Defendants argue that plaintiffs' complaint lacks facts to establish the

existence of a conspiracy to deprive plaintiffs' rights or any agreement or

concerted effort by the defendants to further said conspiracy.

A careful review of the complaint, however, reveals sufficient allegations to

establish a civil rights conspiracy has been plead to defeat a motion to dismiss.

As set forth above, plaintiffs claim that the defendants violated their constitutional

rights including their right to equal protection.  The complaint further alleges that

the conspiracy: "was an express or implied agreement between the defendants

and others, whose exact identity is unknown to plaintiffs prior to discovery, to

deprive the plaintiffs of their constitutional rights[.] . .  The defendants were

voluntary participants in the common venture, understood the general objectives

of the plan and knew it involved the likelihood of the deprivation of the

constitutional rights, accepted those general objectives, and then agreed, either

explicitly or implicitly, to do their part to further those objectives.   The defendants

23

then did each act, or where there was a duty to act, refrained from acting, in a manner intended to facilitate the deprivation of plaintiffs' constitutional rights as alleged." (Doc. 1, Compl. ¶¶ 99-101).

At the motion to dismiss stage of the proceedings, before the parties have engaged in discovery, the court finds that these allegations are sufficient to support plaintiffs' civil rights conspiracy claim. Accordingly, the defendants' motion to dismiss the civil rights conspiracy claim found in Count VIII will be denied.

### 9. Qualified Immunity for Individual Officers

In the final issue raised by the defendants, they argue that the individual defendants, Police Chief Kotchik and Police Officer Bevilaqua, are entitled to qualified immunity. The court finds, however, that qualified immunity is not appropriate in the instant case.

Qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 102 (1982). "In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) 'whether the facts that the plaintiff has alleged make out a violation of a constitutional right,' and (2) 'whether the right at issue was

24

"clearly established" at the time of the defendant's alleged misconduct.' " Kedra v.

Schroeter, 876 F.3d 424, 434 (3d Cir. 2017), cert. denied, 138 S. Ct. 1990 (2018)

(quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). With respect to the

second, "clearly established" prong, the United States Court of Appeals for the

Third Circuit has explained:

> [I]t need not be the case that the exact conduct has previously been
> held unlawful so long as the "contours of the right" are sufficiently clear,
> [Anderson v. Creighton, 483 U.S. 635, 640 (1987)], such that a
> "general constitutional rule already identified in the decisional law"
> applies with "obvious clarity," [Hope v. Pelzer, 536 U.S. 730, 741
> (2002)]. "If the unlawfulness of the defendant's conduct would have
> been apparent to a reasonable official based on the current state of the
> law, it is not necessary that there be binding precedent from this circuit
> so advising." Brown v. Muhlenberg Twp., 269 F.3d 205, 211 n.4 (3d
> Cir. 2001). "[O]fficials can still be on notice that their conduct violates
> established law even in novel factual circumstances," because the
> relevant question is whether the state of the law at the time of the
> events gave the officer "fair warning." Hope, 536 U.S. at 741....

Kedra, 876 F.3d at 450.

The defendant police officers argue that their alleged conduct did not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known.  The court disagrees.

The complaint alleges that the police defendants used their authority to

prevent plaintiffs from operating their business and to effectively shut it down. It is

beyond question that a reasonable police officer would know that it would violate

plaintiffs' rights to act in the manner alleged in the complaint.  The law provides

that the government may not arbitrarily interfere with the fundamental right "to follow any lawful calling, business, or profession [a person] may choose[.]" Dent v. State of W.Va., 129 U.S. 114, 121 (1889); Pieknick v. Commonweatlh of Pa., 36 F.3d 1250, 1259-60 (3d Cir. 1994) (discussing the right to hold specific private employment and to follow a chosen profession from unreasonable governmental interference).   Accordingly, qualified immunity does not apply, and the defendants' motion to dismiss will be denied on this point.

### 10. Motion for Voluntary Dismissal

One other motion remains on the docket for the court's consideration.  On December 15, 2023, plaintiffs moved to voluntarily dismiss two of the named plaintiffs, Vincent Gunther and Richard Mondesir pursuant to Federal Rule of Civil Procedure 41(a)(2).  (Doc. 29).  Rule 41(a)(2) provides for dismissal by court order "on terms that the court considers proper."  Plaintiff seeks dismissal of these plaintiffs as they are mere investors in Mondesir Entertainment Investment Group, LLC and have no role in the operation of the business.  (Id. ¶ 5).

The defendants indicated that they did not oppose the plaintiffs' motion. (Doc. 32, Defs.' Br.).  They requested, however, that Vincent Gunther and Richard Mondesir be compelled to appear for deposition before being dismissed. (Id. at 2).  On March 22, 2024, the court issued an order directing these two

plaintiffs to appear for a deposition within thirty (30) days.  (Doc. 36).  That thirty-day deadline has expired and nothing on the record indicates that the plaintiffs failed to appear for deposition.  Therefore, the court will grant plaintiffs' motion to voluntarily dismiss Vincent Gunther and Richard Mondesir from this action.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss will be granted in part and denied in part.  The following will be dismissed from plaintiffs' complaint:  Count V – Substantive Due Process; Count VI – Negligent Infliction of Emotional Distress; Count VII- Intentional Infliction of Emotional Distress; and Count IV – Interference with Business Relations as to Defendant Kingston Borough only. The motion to dismiss will be denied in all other respects. Additionally, plaintiffs' motion to dismiss Plaintiffs Vincent Gunther and Richard Mondesir from this action will be granted.  An appropriate order follows.

Date: 5/22/24

JUDGE JULIA K. MUNLEY
United States District Court