## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PIERRE MONDESIR, individually and :     No. 3:22cv1175
trading as Mondesir Entertainment :
Investment Group, LLC, :
                  **Plaintiff** :     (Judge Munley)
       :
      **v.** :
       :
KINGSTON BOROUGH; CHIEF :
RICHARD J. KOTCHIK; OFFICER :
JOHN BELVILAGUA; and OFFICER :
"DOE" 1-10, :
               **Defendants** :

## MEMORANDUM

Plaintiff Pierre Mondesir purchased a takeout pizza shop and bar in Kingston Borough which went out of business not long after the purchase. He contends that the borough and two of its police officers, Chief Richard J. Kotchik and Officer John Bevilaqua, used their official authority in a manner that violated plaintiff's civil rights, effectively forcing his business to close. Through a motion for summary judgment, defendants assert that Mondesir has no evidence to support such allegations. As discussed below, defendants are correct and their motion for summary judgment will be granted.

**Background**

In April 2021, Pierre Mondesir bought a business—Leonardo's—in Kingston Borough, Luzerne County.[1] (Doc. 52, SOF ¶ 1).  At the time of purchase, Leonardo's operated as a pizza shop and beer store. (Id. ¶ 2). The bar on the property was not operating. (Id.)  Mondesir testified that he purchased the property because it had a bar and a place to hold parties. (Doc. 52-2, Pl. Dep. 14:6-15:19).  Mondesir indicated that he invested over $100,000 into rehabilitating the structure. (Id. 43:5-20).

Mondesir later opened the bar.[2] (Doc. 52, SOF ¶ 5; Doc. 52-2, Pl. Dep. 44:7-10).  He testified that he ran part of the bar area as a private club. (Doc. 52-2, Pl. Dep. 33:5-15).

Mondesir's vision for Leonardo's came into conflict with local building codes and zoning ordinances.  On October 18, 2021, Mondesir applied for a zoning permit to offer live entertainment, live bands, and DJs at Leonardo's. (Doc. 52-5,

---

[1] Unless noted otherwise, the court cites to the defendants' statement of material facts ("SOF"), (Doc. 52), for facts which the plaintiff admitted in his response to the SOF, (see Doc. 51, "RSOF").  Additionally, the court cites to plaintiff's counterstatement of material facts ("CSOF"), (Doc. 54), for additional facts not present in the SOF but which the defendants admitted in their response ("RCSOF"), (Doc. 60). All facts from the record are construed in a light most favorable to Mondesir as the nonmoving party. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015) (citation omitted).

[2] Mondesir testified that the bar operated as Shanix and Leonardo's. (Doc. 52-2, Pl. Dep. 44:7-12, 72:20-73:9).  The court refers to all of the businesses operating on the property as "Leonardo's" to avoid confusion.

2

ECF p. 1).  The application was denied by the zoning officer and by the Kingston Borough Zoning Hearing Board ("Kingston ZHB") because it was a non-permitted use in a commercial zone where the property was located.  (Id. ECF pp. 27–31, ZHB Decision I).  Thereafter, Mondesir filed a notice of appeal in the Luzerne County Court of Common Pleas, which remanded the matter back to the Kingston ZHB with questions regarding pre-existing, non-conforming uses. (Id. ECF pp. 37–45, ZHB Decision II).  Based on testimony and evidence presented at the remand hearing, the Kingston ZHB reaffirmed its original decision to deny Mondesir's application for live entertainment at Leonardo's, holding that there was no evidence of a pre-existing, non-conforming use at the property. (Id.) Additionally, the Kingston ZHB concluded that any pre-existing use of live entertainment had been abandoned for at least four years. (Id.)

While zoning and land use proceedings were ongoing, the Kingston Borough Police Department ("Kingston PD") responded to Leonardo's on multiple occasions for reasons disputed by the parties in this matter. (Doc. 52, SOF ¶¶ 13-15).  Defendants contend that the police responses were for legitimate purposes. (Id.)  Mondesir asserts that police officers intended to intimidate his customers. (Doc. 54, CSOF ¶ 24).  In any event, at no time did an officer of Kingston PD initiate charges or take action against Mondesir. (Doc. 52, SOF ¶ 20).

In April 2023, Kingston Borough's fire chief notified Mondesir that an investigation was ongoing regarding overcrowding at the establishment. (Doc. 52-5, ECF p. 35).  Per the fire chief, he had evidence from Kingston PD and borough code enforcement that an estimated crowd of 200 or more individuals was present on the premises on April 23, 2022, in violation of the code. (Id.) Leonardo's certificate of occupancy only permitted 85 persons. (Id. ECF pp. 35–36).  At his deposition, Mondesir testified that a Kingston Borough official showed him a video on the official's phone and told him that Leonardo's had over 200 people on the premises.  (Doc. 52-2, Pl. Dep. 47:5-48:19).  Mondesir nonetheless denied that Leonardo's had over 200 people on the premises in April 2022. (Id.)

Kingston Borough revoked Leonardo's certificate of occupancy with an effective date of April 26, 2022. (Doc. 52, SOF ¶ 11).  In a letter, Kingston Borough's code enforcement officer notified Mondesir of the revocation and ordered him to cease and desist from operating any business at the location. (Doc. 52-5, ECF p. 32).  The borough further stated in the letter that Kingston PD had confirmed that Leonardo's was providing live entertainment on the premises in direct violation of the Kingston ZHB decision and that the premises had been overcrowded. (Id.)  As a result, the property was deemed off-limits to all individuals effective immediately. (Id.)  The letter also explained that the

4

revocation would be permanent unless Mondesir's pending appeal of the board's decision was adjudicated in his favor by the Luzerne County Court of Common Pleas. (Id.)  From the record available to the court, it does not appear that the zoning matter was appealed again to the trial court.

According to defendants, Leonardo's unlawfully hosted live entertainment on multiple occasions. (Doc. 60, CSOF ¶ 1).  For instance, a police officer working in an undercover capacity witnessed a DJ performing live at Leonardo's on April 22, 2022. (Doc. 52-5, ECF p. 106).  The record also includes multiple advertisements promoting live entertainment at the premises. (See Doc. 56-11). Frederic Strohl, Leonardo's former manager, testified that advertisements for live events were posted online and, at times, were displayed at the facility. (Doc. 52-3, F. Strohl Dep. 48:13-49:4).  Strohl further testified that during his time at Leonardo's, various DJs performed there on numerous occasions. (Id. 49:8-50:14).

Mondesir, by contrast, maintains that his establishment never hosted live entertainment. (Doc. 54, CSOF ¶ 1).  He also asserts that the advertisements were not created at his direction and that he had no control over their content. (Id.)

5

Mondesir voluntarily ceased operations at Leonardo's at some point in 2022.[3] (Doc. 52, SOF ¶ 21).  Mondesir contends that defendants' actions caused the closure. (Doc. 53, RSOF ¶ 21).  According to Mondesir, the constant presence of police officers near Leonardo's conveyed the message that black patrons and a black owner of the establishment were not welcome in Kingston. (Doc. 54, CSOF ¶ 29).  Defendants, however, assert that the police officers reported to Leonardo's on multiple occasions when called to address specific, legitimate concerns. (Doc. 60, RSOF ¶ 26).

Plaintiff filed his complaint on July 28, 2022 with eight (8) separate claims. (Doc. 1).  Following a split ruling on defendants' motion to dismiss, <u>Mondesir v. Kingston Borough</u>, No. 3:22CV1175, 2024 WL 2328210 (M.D. Pa. May 22, 2024), the operative claims remaining in this case are as follows:

- **<u>Count I</u>** – Deprivation of property interest (liquor license and occupancy permit) without due process of law, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution as to all defendants;

- **<u>Count II</u>** – Violation of the Equal Protection Clause of the United States Constitution based on selective enforcement pursuant to 42 U.S.C. § 1983 as to Defendants Chief Kotchik, John Bevilagua, and Officer "Doe" 1-10;

---

[3] Per Mondesir, he closed the club portion of the business in March 2022. (Doc. 52-2, Pl. Dep, 103:17-104:4).  He then testified that as of May 2022, Leonardo's was still receiving customers. (<u>Id.</u> at 104:5-8).

6

- **Count III** – Municipal liability claim for Kingston Borough's failure to adequately train its officers under <u>Monell v. Dep't of Soc. Svcs. of City of New York</u>, 436 U.S. 658 (1978);

- **Count IV** – State common law claims for tortious interference with business relations as to Defendants Chief Kotchik, John Bevilagua, and Officer "Doe" 1-10;

- **Count VIII** – Civil conspiracy under 42 U.S.C. § 1983 as to all defendants.

Following the close of discovery, defendants filed a motion for summary judgment on the above claims. (Doc. 50). Their brief in support addressed all five counts remaining in the complaint. (Doc. 51). Mondesir's brief in opposition only addressed his selective enforcement claim asserted in Count II under 42 U.S.C. § 1983 ("Section 1983"). (Doc. 55 at 6–24). Despite this apparent abandonment of certain claims, the parties have supplied an extensive record. After careful review, summary judgment is appropriate, and the motion will be granted in favor of defendants as to all claims.

**Jurisdiction**

As plaintiff brings several claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), the court has federal question jurisdiction. <u>See</u> 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendants have filed a motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'…[a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels, 776 F.3d at 187, and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the [opposing] party[,]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982). Furthermore, "a court's role remains

circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted).  "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

As for the claims apparently discarded by the counseled plaintiff, a motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case ... on which that party will bear the burden of proof at trial.' " Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986) (emphasis removed)).  After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' " Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324).  The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts." Id. (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587).

9

If a party fails to properly address another party's assertion of fact as required by Rule 56, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).  Summary judgment is appropriate where the moving party is entitled to judgment as a matter of law. Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990).

**Analysis**

Prior to reviewing Mondesir's claims against the summary judgment record itself, there are threshold disputes over that record, which were raised by the defendants in their reply brief.  Defendants contend that Mondesir has engaged in litigation misconduct.  Mondesir has not responded to these serious allegations.

### 1. Whether the Court Should Consider Video Evidence and Mondesir's Affidavit

Defendants raise two issues, one related to video footage provided by plaintiff after the motion for summary judgment was filed and another regarding Mondesir's affidavit, which defendants argue is a sham affidavit. The court will address these issues in turn.

*Surveillance and Snapchat Videos* – To support his brief in opposition, Mondesir attached a series of short videos purportedly demonstrating a police

presence outside of Leonardo's. (See Doc. 56-4). While defendants maintain that these videos do not demonstrate any improper conduct, they contend that their use in support of Mondesir's brief in opposition is improper. (Doc. 59, Reply Br. at 7-9). Defendants argue that they specifically requested video footage in their initial discovery requests on at least four occasions.[4] (Id. at 8).

Defendants aver that Mondesir provided the requested videos for the first time in an email dated January 21, 2025, over a month after the expiration of the discovery deadline in this matter and nearly three weeks after defendants submitted their motion for summary judgment. (Id. at 9). Per defendants, Mondesir has offered no justification for his failure to produce these videos during discovery. (Id.) Thus, defendants argue that the video footage Mondesir relied upon in his brief in opposition should be excluded from consideration.

Rule 26 of the Federal Rules of Civil Procedure requires litigants to supplement discovery responses in a timely manner should additional responsive information become known or available, or should the responding party learn that a previously made disclosure is incorrect or incomplete. FED. R. CIV. P. 26(e)(1). Additionally, Rule 37 provides that "[i]f a party fails to provide information... as

---

[4] Defendants requested a discovery conference with the court on July 9, 2024 and August 5, 2024 to address plaintiff's failure to produce these videos. (Doc. 59, Reply Br. at 8–9). Nevertheless, a scheduled discovery conference was cancelled upon the defendants' request. (See Doc. 45).

required by [Rule 26(e)], the party is not allowed to use that information… to supply evidence on a motion… or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

To rely on the videos in opposing the motion for summary judgment, Mondesir must demonstrate that his failure to produce them in discovery was substantially justified or harmless. Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002). Plaintiff can demonstrate neither.

First, "substantial justification" means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Id. (citation omitted). "The test of substantial justification is satisfied if 'there exists a genuine dispute concerning compliance.' " Id. at 175-76 (citation omitted). Mondesir, however, did not attempt to refute defendants' assertions.[5]

Second, "[a] party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Id. From the circumstances discernable to the court, the misconduct is not harmless.

---

[5] Although this issue was raised in defendants' reply brief, Mondesir could have requested leave to file a sur-reply brief to challenge these assertions.

12

Furthermore, the decision to exclude evidence is also a matter of the court's discretion. Several factors[6] have been identified for courts to consider when exercising that discretion:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified or the excluded evidence would have been offered; (2) the ability of that party to cure the prejudice; (3) the extent to which allowing such witnesses or evidence would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) any bad faith or willfulness in failing to comply with the court's order and (5) the importance of the excluded evidence.

See ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

In consideration of the above factors, plaintiff has offered no explanation why video evidence was submitted after the discovery and dispositive motions deadlines or why such late disclosure is harmless. Defendants conducted discovery, formulated their litigation strategy, and prepared their dispositive motion without the opportunity to examine this evidence or question witnesses in their depositions about such evidence. They are prejudiced at this point in the litigation. The court cannot alleviate such prejudice without completely reopening the record. Doing so would condone plaintiff's discovery violations and untimely

---

[6] These factors are commonly referred to as the Pennypack factors as originating from Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977), overruled on other grounds by Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985).

disclosures. Additionally, the decision to produce the videos in opposition to summary judgment (after over two years of litigation) supports an inference of willfulness. Finally, as for the importance of the videos, plaintiff cites them for the proposition that they demonstrate "an abusive police presence" and efforts "to harass and intimidate the bar's black and Hispanic patrons[.]" (Doc. 55 at 18–19). If such evidence is as important as Mondesir claims, he had every reason to disclose it during discovery. Because he did not, the court will not consider the videos offered by Mondesir in opposition to summary judgment.[7]

*Mondesir's Affidavit* – Mondesir also submits his own affidavit to oppose the motion for summary judgment. (Doc. 56-1). In reply, defendants assert that Mondesir's affidavit is unsupported by the record and created for the sole purpose of defeating summary judgment. (Doc. 59, Reply Br. at 12). Defendants thus rely on the sham affidavit rule to argue that Mondesir's missive should be disregarded here. See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007) ("A sham affidavit is a contradictory affidavit that indicates only that the

---

[7] Having reviewed the video submissions in order to exercise its discretion, the court concludes that the videos do not demonstrate much of anything. Police vehicles are visible enough to be identified in three of the videos. In addition to one Kingston PD vehicle observable in one video, a Pennsylvania State Police and an Edwardsville Police Department vehicle are visible in the other videos. Additionally, one other submission appears to be a Snapchat video depicting the establishment filled shoulder-to-shoulder with patrons. Snapchat stickers suggest that the video was taken at 1:58 a.m. during a birthday party. Even if considered in this case, the videos would not create a genuine issue of material fact as to any of plaintiff's claims.

affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment."). After review of the affidavit against the record, a very time-consuming process, adopting the defendants' position in this case would extend that doctrine too far.

Specific rules about affidavits exist at the summary judgment phase because memory is fallible, but fabrication is unforgivable. See FED. R. CIV. P. 56(h) ("If satisfied that an affidavit or declaration under [Rule 56] is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.")

Short of such sanctionable conduct, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004) (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)). As recently articulated, "[t]he sham affidavit rule allows a court to disregard a later statement by a deponent on two conditions: the later statement contradicts the witness's deposition testimony, and the discrepancy between the two statements is neither supported by record

15

evidence nor otherwise satisfactorily explained." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 209 (3d Cir. 2022) (citing Daubert v. NRA Grp., LLC, 861 F.3d 382, 391–92 (3d Cir. 2017); Jiminez, 503 F.3d at 254.  In applying this doctrine, courts "adhere to a 'flexible approach,'…giving due regard to the 'surrounding circumstances[.]' " Daubert, 861 F.3d at 391 (quoting Baer, 392 F.3d at 624).

> If, for example, the witness shows she was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact.  Same result if there's independent evidence in the record to bolster an otherwise questionable affidavit.
>
> The court may, on the other hand, disregard an affidavit when the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction.  It may similarly disregard an affidavit entirely unsupported by the record and directly contrary to other relevant testimony, or if it's clear the affidavit was offered solely to defeat summary judgment.

Id. at 391–92 (cleaned up).

At the same time, the sham affidavit rule "does not apply to… noncontradictory portions of the declarations" because that would take the trial judge into the forbidden province of weighing witness credibility. SodexoMAGIC, LLC, 24 F.4th at 210 (3d Cir. 2022).

A review of Mondesir's affidavit reveals that only certain portions, rather than the affidavit as a whole, are contradicted by his testimony. Specifically, the affidavit states that Kingston Borough concluded that the nonconforming use (live entertainment at the subject property) had been abandoned despite having no records of prior nonconforming uses. (See Doc. 56-1 ¶ 14). This particular paragraph in the affidavit is contradicted by Mondesir's own deposition testimony in which he repeatedly stated that the bar had not been in operation when he purchased the business. (Doc. 52-1, Pl. Dep., 15:6–17:13). This testimony supports the borough's determination that any nonconforming use had been abandoned. Additionally, the former manager of Leonardo's, Frederic Strohl, similarly testified that the portion of the property dedicated to a bar had been closed at the time plaintiff purchased it. (See Doc. 52-3, F. Strohl Dep. at 7:5-12).

For purposes of the analysis that follows, the court will apply the sham affidavit rule only to those portions of Mondesir's affidavit addressing zoning issues. Summary judgment does not present an occasion to make credibility assessments. SodexoMAGIC, LLC, 24 F.4th at 210. Thus, the court will deny defendants' request to strike the remaining portions of Mondesir's affidavit. In any event, as explained below, those other portions of the affidavit do not defeat summary judgment.

### 2. Defendants Officer "Doe" 1-10 Will Be Dismissed

Mondesir's affidavit does not save his claims relative to Defendants Officer "Doe" 1-10, the unidentified police officer defendants in this matter. Under the law, "Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.' " <u>Hindes v. F.D.I.C.</u>, 137 F.3d 148, 155 (3d Cir. 1998) (quoting <u>Scheetz v. Morning Call, Inc.</u>, 130 F.R.D. 34, 36 (E.D. Pa. 1990)). A plaintiff must identify a Doe defendant because, if discovery yields no identities, fictitious parties must eventually be dismissed. <u>See id.</u> (citing <u>Scheetz</u>, 130 F.R.D. at 37).

Moreover, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. Put another way, "Rule 21 empowers courts to police the litigation's cast of characters." <u>Avenatti v. Fox News Network LLC</u>, 41 F.4th 125, 130 (3d Cir. 2022).

Where a plaintiff has had a reasonable opportunity to conduct discovery and ascertain the identities of John Doe defendants but has failed to do so, dismissal of the John Doe defendants is appropriate. <u>Blakeslee v. Clinton Cnty.</u>, 336 F. App'x 248, 250 (3d Cir. 2009). Courts in the Third Circuit have used Rule 21 to exclude Doe parties from an action under appropriate circumstances, such as the failure to identify individuals during discovery. <u>See King v. Mansfield Univ. of Pennsylvania</u>, No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept.

18

12, 2014) (Brann, J.) (collecting cases).  Moreover, at the summary judgment stage, claims against unidentified defendants cannot proceed to trial because the plaintiff cannot establish that a genuine dispute of material fact exists as to any particular individual. See Celotex Corp., 477 U.S. at 322–23.

At this stage, discovery has been closed and Mondesir has not identified Officer "Doe" 1-10 by name.  The court will thus dismiss all claims against these defendants under Rule 21.

That leaves two known, named police officers from Kingston PD as defendants in this action, Chief Kotchick and Officer Bevilaqua.  The court will discuss the claims involving these individual defendants after a more general evaluation of the evidence against Mondesir's claims in this matter.  As discussed next, Mondesir's evidence is insufficient to counter the evidence supplied in support of the motion for summary judgment

### 3. Summary Judgment is Appropriate on Mondesir's Section 1983 Claims

Mondesir's complaint asserts that defendants violated his Fourteenth Amendment rights by violating his due process and equal protection rights. Section 1983 serves as the vehicle through which private citizens may seek redress for violations of federal constitutional rights committed by state officials. The statute is not a source of substantive rights; rather it serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v.

<u>Doe</u>, 536 U.S. 273, 284–85 (2002). As such, Section 1983 serves as a statutory tool for enforcing the Fourteenth Amendment. <u>Lynch v. Household Finance Corp.</u>, 405 U.S. 538, 545 (1972). The court will address Mondesir's procedural due process claims first.

### a. Procedural Due Process Claims

The Fourteenth Amendment of the U.S. Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. CONST. AMEND XIV, §1. Procedural due process requires that individuals receive "the opportunity to be heard at a meaningful time and in a meaningful manner" when they are impacted by government action. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). To prevail on a procedural due process claim, a plaintiff must establish that: 1) the defendant acted under color of state law; (2) the defendant deprived him of a property interest; and (3) the state procedures for challenging the deprivation failed to satisfy the procedural due process requirements. <u>Midnight Sessions, Ltd. v. City of Phila.</u>, 945 F.2d 667, 680 (3d Cir. 1991) (overruled on other grounds by <u>United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA</u>, 316 F.3d 392 (3d Cir. 2003)).

Mondesir alleges in his complaint that the defendants deprived him of his liquor license and occupancy permit without affording him due process of law. (Doc. 1, Compl. ¶¶ 61, 69). However, when a state "affords a full judicial

mechanism with which to challenge the administrative decision" at issue, it

provides adequate procedural due process, regardless of whether a plaintiff

elects to avail himself of that process. <u>DeBlasio v. Zoning Bd. of Adjustment for

Twp. of W. Amwell</u>, 53 F.3d 592, 597 (3d Cir. 1995), <u>abrogated by</u> <u>United Artists

Theatre Cir., Inc. v. Twp. of Warrington, PA</u>, 316 F.3d 392 (3d Cir. 2003); <u>see

also</u> <u>Midnight Sessions</u>, 945 F.2d at 681 ("The availability of a full judicial

mechanism to challenge the administrative decision to deny an application, even

an application that was wrongly [decided], preclude[s] a determination that the

decision was made pursuant to a constitutionally defective procedure.").

The allegations that Kingston PD, Chief Kotchick, and Officer Bevilacqua

deprived Mondesir of his liquor license are meritless against the summary

judgment record.  Mondesir testified that his liquor license was not revoked.

(Doc. 52-2, Pl. Dep. 93: 16-17).  Additionally, there is no evidence that Kingston

PD was involved in any alleged liquor license violations.  Rather, a Pennsylvania

Liquor Control Board adjudication (supplied by Mondesir) indicates that the

license was suspended for one day in October 2022 and Mondesir's business

was assessed a $2,500 fine. (Doc. 56-3, ECF p. 4).  The adjudication indicates

that Mondesir executed a statement of admission, waiver, and authorization in

which he: 1) admitted to the charged violations; 2) agreed that the Bureau of

Liquor Control Enforcement of the Pennsylvania State Police ("Bureau") complied

with all applicable laws and regulations; 3) authorized the administrative law judge to enter an adjudication without a hearing based on the Bureau summary of facts and prior citation history; and 4) waived his right to appeal the adjudication. (Id. ECF p. 3).

As for the zoning and occupancy permit issues, Mondesir has not supplied evidence indicating that he fully availed himself of the process available in state courts to challenge local land use decisions.  Under the law, when a state provides a judicial mechanism that appears to afford due process, the plaintiff may not bypass that remedy and seek relief in federal courts. See McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995).   Accordingly, federal courts routinely reject procedural due process claims asserted by plaintiffs who fail to fully avail themselves of those remedies under state law. See, e.g., Giuliani v. Springfield Twp., 238 F. Supp. 3d 670, 692 (E.D. Pa. 2017), aff'd, 726 F. App'x 118 (3d Cir. 2018); Sixth Angel Shepherd Rescue Inc. v. West, 790 F. Supp. 2d 339, 358 (E.D. Pa. 2011), aff'd, 477 F. App'x 903 (3d Cir. 2012); See also Zinermon v. Burch, 494 U.S. 113, 126 (1990) (holding that a due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.").

The evidence supplied by defendants indicates that Mondesir's certificate of occupancy was revoked as of April 26, 2022. (Doc. 52-5, ECF p. 36).

According to defendants, the revocation stemmed from severe overcrowding that far exceeded Leonardo's permitted occupancy. (Id. ECF pp. 32-33). In a letter addressed to Mondesir, Kingston Borough explained that the revocation would be permanent unless Mondesir's pending appeal of the Kingston ZHB decision was adjudicated in his favor by the Luzerne County Court of Common Pleas. (Id.) In response to this evidence and defendants' arguments, Mondesir did not supply any countervailing evidence or contrary arguments. The record ends with the Kingston ZHB decisions. Nothing in the record indicates that Mondesir appealed that decision to the trial court.

Consequently, it is undisputed that Mondesir retained the opportunity to appeal the land use decisions by Kingston Borough to the Luzerne County Court of Common Pleas throughout his ownership and operation of Leonardo's but failed to do so. Because no reasonable jury could conclude that adequate judicial remedies were not available to Mondesir under state law, defendants' motion for summary judgment as to Mondesir's procedural due process claims will be granted.

### b. Equal Protection Claims

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND XIV, §1. The Equal Protection Clause directs that "all persons similarly situated

23

should be treated alike." <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  To succeed with a Section 1983 claim for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination and demonstrate that he received different treatment from that received by other individuals similarly situated.  <u>Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.</u>, 587 F.3d 176, 196 (3d Cir. 2009).

Here, Mondesir's equal protection claims take the form of selective enforcement.  These selective enforcement claims are advanced only against Chief Kotchik and Officer Bevilaqua, not Kingston Borough. (Doc. 1, Compl. ¶¶ 71–82).

Selective enforcement of, and selective prosecution under, facially neutral laws or policies is a form of discrimination that violates the Equal Protection Clause. <u>Hill v. City of Scranton</u>, 411 F.3d 118, 125 (3d Cir. 2005) (citing <u>Yick Wo v. Hopkins</u>, 118 U.S. 356, 373-74 (1886); <u>Holder v. City of Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993)).

Mondesir identifies as a person of color.  He also asserts that Leonardo's was the only bar and restaurant in Kingston Borough owned by a person of color. Additionally, Mondesir avers that Leonardo's clientele was predominantly African American and Hispanic.  On this basis, Mondesir predicates his selective enforcement claims on race.

24

"To make an equal protection claim in the profiling context," Mondesir must demonstrate that the actions of Chief Kotchik and Officer Bevilaqua "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002) (citing Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264–66 (1977); Washington v. Davis, 426 U.S. 229, 239–42 (1976) (further citations omitted).  To establish a discriminatory effect, Mondesir must show that he was treated differently from other similarly situated individuals. Id.  A "discriminatory purpose," in essence, means an "unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right." Holder, 987 F.2d at 197 (citing United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir. 1989) (internal quotations omitted).

With respect to the similarly situated element, persons are similarly situated under the Equal Protection Clause when they are "alike in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).  Mondesir must therefore prove that Leonardo's was treated differently from similarly situated establishments and must produce evidence from which a racially discriminatory purpose can be inferred.  Mondesir's assertion that Leonardo's was the only bar and restaurant owned by a person of color in Kingston Borough, standing alone,

25

does not satisfy his burden.  Likewise, lists of other establishments, without any further explanation or supporting detail, do not suffice.

Additionally, Mondesir referenced another bar numerous times in his deposition, Swizzle Sticks, a bar his business shared a parking lot with. (Doc. 52-2, 58:10-17, 61:23–63:24; 78:14–81:19, 83:4–85:23; 86:20–90:1; 102:3-14; 104:24–105:6; 125:3–126:4).  However, the border of Edwardsville Borough and Kingston Borough runs down Main Street. Id.  Mondesir's establishment was located in Kingston, while Swizzle Sticks was in Edwardsville.  Mondesir offered no evidence regarding the demographic composition of Swizzle Sticks' clientele, nor any evidence that Swizzle Sticks received preferential treatment from any police department.  Thus, Swizzle Sticks is not an appropriate comparator business.  Additionally, its existence supplies non-discriminatory reasons why police departments from two different jurisdictions would have patrolled the area around Mondesir's business.

At summary judgment, the plaintiff must present evidence sufficient to permit a reasonable jury to find that the defendant officers engaged in selective enforcement. See Hill, 411 F.3d at 125.  After review of the record, all Mondesir has to offer are conclusory allegations of discriminatory treatment without specific factual support and evidence that no reasonable jury would use to find in his

favor.  Summary judgment will be granted in favor of Chief Kotchik and Officer Bevilaqua on the selective enforcement claim.

### c. Municipal Liability Claims Against Kingston Borough

Count III of Mondesir's complaint alleges that Kingston Borough failed to train its police officers, a municipal liability claim.  As demonstrated above, Mondesir has advanced no evidence of an underlying constitutional violation. Nonetheless, the court will briefly address this count in Mondesir's complaint.

Under certain circumstances, a municipality may be found to violate Section 1983 by failing to train or supervise its employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989); Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019).  To satisfy Section 1983, a municipality's failure to train or supervise its employees in a relevant respect must be caused by an inadequacy that reflects deliberate or conscious choice, Forrest, 930 F.3d at 105, or amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact[,]" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, 489 U.S. at 388)).

A plaintiff could bring a "failure to train and supervise" claim under a "pattern of violations" theory or a "single violation" theory.  Under the "pattern of violations theory," liability can be imposed where the alleged policy or practice "concerns a failure to train or supervise municipal employees" by showing "that

the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir.1999).   As for the "single-incident" theory of liability, the Third Circuit Court of Appeals has reiterated that such claims are "vanishingly rare" and may proceed in only "unusual" and "extreme" cases. Miller v. City of Philadelphia, 162 F.4th 88, 94 (3d Cir. 2025) (citing City of Canton, 489 U.S. at 390, n.10; Connick, 563 U.S. at 63–64; Hightower v. City of Philadelphia, 130 F.4th 352, 357 (3d Cir. 2025)).   It has emphasized that the United States Supreme Court has never found this bar satisfied and that the hypothetical example offered in Canton involved life-or-death consequences from a failure to train—"if a city armed its police with guns and set them loose without any legal training on when to use them." Hightower, 130 F.4th at 357.

Here, Mondesir does not specify under which theory he advances his municipal liability claim. Regardless, his claim fails under either theory.  Under the "pattern of violations" theory, Mondesir failed to produce evidence of any constitutional violations by inadequately trained or supervised employees.  Nor does this case fit under the "single-incident" theory, which applies only in narrow circumstances involving life-or-death consequences arising from a failure to train. Accordingly, summary judgment will be granted on all of Mondesir's claims against Kingston Borough.

### d. Civil Conspiracy Claims

Count VIII of Mondesir's complaint alleges a civil rights conspiracy under Section 1983.  But, "[t]here can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege." Rink v. Ne. Educ. Intermediate Unit 19, 717 F. App'x 126, 141 (3d Cir. 2017) (citing Black v. Montgomery Cty., 835 F.3d 358, 372 n.14 (3d Cir. 2016) and Bazzi v. City of Dearborn, 658 F.3d 598, 602 (6th Cir. 2011).  Mondesir has not produced evidence of any underlying constitutional violation against him.  Therefore, summary judgment is warranted on plaintiff's civil conspiracy claim.

## 4.  State Law Claims

The only claims remaining are Mondesir's allegations that Chief Kostick and Officer Bevilaqua committed tortious interference with plaintiff's business relationships.  Summary judgment is also appropriate on this claim.

To state a claim for intentional interference with prospective contractual relations, a plaintiff must show:  1) a prospective contractual relationship between plaintiff and a third party; 2) a purpose or intention to harm plaintiff by preventing that relationship from occurring; 3) the absence of privilege or justification with respect to defendants' conduct; and 4) the occurrence of actual harm or damage to plaintiff resulting from defendants' conduct.  Orange Stones Co. v. City of

Reading, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014).   To prevail on such a

claim, a plaintiff must show that the Defendants intentionally induced or

intentionally caused a third person not to perform a contract with the plaintiff.

Restatement (Second) of Torts § 766; KBT Corp., Inc., v. Ceridion Corp., 966 F.

Supp. 369, 376 (E.D. Pa. 1997).

    In this case, Mondesir did not address this claim in his brief in opposition.

Instead, he offers only a conclusory assertion that repeated law enforcement

visits to Leonardo's harmed his business by intimidating customers and deterring

them from patronizing Leonardo's. (Doc. 55, Br. in Opp. at 2, 6).   Mondesir has

not produced evidence that Chief Kostick and Officer Bevilaqua intentionally or

improperly interfered with any existing or prospective contractual relationship

between Leonardo's and a third party.   Therefore, defendants' motion for

summary judgment will be granted as to Mondesir's claim for tortious interference

with business relationships.

**Conclusion**

    For the reasons set forth above, defendants' motion for summary judgment,

(Doc. 50), will be granted.   An appropriate order follows.

**Date:** 2/10/26

                                       **JUDGE JULIA K. MUNLEY**
                                       **United States District Court**